## STATE OF CONNECTICUT *v.* JOHN B.[1]
## (AC 27305)

Schaller, Harper and Rogers, Js.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued February 5—officially released July 17, 2007

*Christopher Y. Duby*, special public defender, for the appellant (defendant).

*Kathryn Ward Bare*, special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Louis J. Luba, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, John B., appeals from the judgment of conviction, rendered following a jury

trial, of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1), attempt to commit kidnapping in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-92 (a) (2) (A), burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and interfering with an officer in violation of General Statutes § 53a-167a (a).[2] The defendant claims that (1) the trial court improperly denied his motion for a new trial on the basis of prosecutorial impropriety[3] and (2) the evidence did not support his conviction of the crimes of attempt to commit sexual assault in the first degree, burglary in the first degree and interfering with an officer. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. For several months prior to the incident underlying this appeal, the defendant and the female victim were neighbors in an apartment building. The defendant and the victim were acquaintances; they had never spoken to each other on the telephone, but the defendant had once been to the victim's apartment, visiting with her and her granddaughter. At approximately 9:30 p.m. on May 8, 2001, the defendant called the victim on the telephone and invited her to his apartment to watch a movie with him. The victim declined the invitation, but the defendant, in a stern voice, insisted that she come to his apartment. After this initial conversation ended,

[2] The court sentenced the defendant to a total effective term of incarceration of forty years.

[3] Although the parties, in their briefs and during argument before this court, addressed the claim as one of "prosecutorial misconduct," in accordance with the recent directive of our Supreme Court; see State v. Fauci, 282 Conn. 23, 26 n.2, 917 A.2d 978 (2007); we refer to the claim as one of "prosecutorial impropriety."

the defendant called the victim again, but the victim did not answer her telephone.

A short time later, the defendant appeared at the victim's apartment, knocking on the door and windows. The defendant identified himself and asked the victim to let him into her apartment. The victim became frightened. As she approached the door to her apartment, the defendant burst through the door, wrapped his hands around her throat and began to choke her. A physical struggle between the defendant and the victim ensued. While the victim tried to break free and to protect herself, the defendant dragged her out of her apartment and into a nearby hallway. The defendant told the victim to "go with it" and to "let go." In a hushed voice, the defendant also told the victim that he loved her. At one point during the struggle, the victim pretended to faint, causing the defendant to loosen his grip on her neck. The victim began to flee, but the defendant grabbed her by one of her legs and pulled her back to him. Eventually, the struggle moved outdoors where the victim, experiencing difficulty as a result of the defendant's assault, began screaming for help. The defendant caught up with her and pinned her against a wall.

A bystander, Myron St. Pierre, heard the victim's cries for help and observed the defendant attempting to pull the victim against her will back inside the apartment building. St. Pierre approached the defendant and the victim, instructing them to break up the melee. The defendant told St. Pierre: "[S]he just got out of a mental institute. She's crazy. We can handle it . . . it's all right." The victim told St. Pierre that the defendant was lying and was trying to kill her. The victim also asked him to call the police. After the defendant briefly chased the victim and St. Pierre, St. Pierre physically restrained the defendant on the ground and instructed the victim to run to a nearby police station. The victim took refuge in her apartment and reported the incident to the police.

St. Pierre restrained the defendant until the police arrived on the scene.

When David Posadas, an officer with the local police department, arrived at the scene, St. Pierre informed him that the defendant had attacked the victim. Posadas asked the defendant what had occurred, and the defendant replied that he had not attacked the victim. The defendant stated that the victim was suicidal and that he had tried to prevent her from harming herself. Posadas also spoke with the victim, who appeared to be upset and disheveled. The victim related the defendant's actions to Posadas; her account was corroborated in part by the caller identification function on her telephone, which reflected that the defendant had called the victim earlier that evening.

The defendant was placed under arrest. A search of his person incident to his arrest yielded, among other items, a pair of handcuffs and a "bondage device."[4] The defendant consented to a police search of his apartment. Although the defendant was calm and cooperative with the police until and immediately following his arrest, he began mumbling to himself and rocking back and forth during the search of his apartment. During the booking process at the police department, the defendant became combative with the police officers involved; he would not comply with the orders being given to him by the officers and refused to be fingerprinted. Officers ultimately used pepper spray in an effort to subdue the defendant.

At approximately 3 a.m. on the morning following his arrest, the defendant indicated that he wanted to discuss the events that culminated in his arrest. After waiving his right to remain silent, the defendant spoke with Sandra Mattucci, an officer with the local police department. The defendant stated that, on the prior

---

[4] The device also was described at trial as both a "gag ball" and a "ball gag."

evening, he had intended to help the victim by bringing her "into a deeper level of consciousness and . . . into a true reality." He stated that he intended to accomplish this by using the handcuffs and bondage device found on his person and by raping and torturing the victim. The defendant admitted that he entered the victim's apartment and choked the victim to "make her unconscious so that he could bring her back upstairs to his apartment . . . [and] bring her into this true reality." He also stated that he previously had used the handcuffs and bondage device on himself and others. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion for a new trial because prosecutorial impropriety during closing argument deprived him of a fair trial. We disagree.

The defendant did not testify in this case. During trial, the defendant presented evidence, including expert testimony, to prove that he was not guilty by reason of mental illness. The defendant's attorney discussed this evidence at length during closing argument and asked the jury to find that, at the time of the attack on the victim, the defendant was suffering from a mental illness to such an extent that he could not be found guilty of the crimes with which he stood charged.

During his rebuttal argument, the prosecutor attempted to cast doubt on the defendant's affirmative defense of mental illness. In this vein, the prosecutor suggested that the expert testimony presented by the defendant was not persuasive and that other evidence tended to disprove the defense. The prosecutor argued that the evidence reflected that the defendant's conduct on the evening of May 8, 2001, was deliberate and that the defendant knew it was wrong. The prosecutor stated: "He knew what he was doing. He planned it. He

executed it. He got caught, and now he's trying to make an excuse for why he did it."

Rebutting the expert testimony concerning the extent of the defendant's mental illness, the prosecutor argued: "One other thing, ladies and gentlemen, that I'm asking you to do is recall your own observations of this defendant, recall his demeanor here in court. [One of the defendant's expert witnesses] testified that [the defendant's] delusions or problems occurred under situations of extreme stress. What could be more stressful than to be standing here accused of these charges and on trial? You can base your opinion based on your observations of it. That's why you're here to observe, to scrutinize, to judge credibility. What were your observations of this defendant? Think about that when you go back in that jury deliberation room?

"Ladies and gentlemen, we weren't there at the time that this incident occurred, but neither were the doctors. They can't tell you what occurred. They can't tell you what happened other than just reading your reports. You had something more. You had the testimony presented for you. [The defendant] was calm; that he was controlled, that he presented himself in a very controlled manner, made those statements not when he didn't know what was going on, when he was collected. He intentionally lied to . . . St. Pierre and the police."

After the state concluded its rebuttal argument, the court excused the jury. The defendant's attorney raised several objections to the state's closing arguments, one of which focused on the argument set forth previously. The defendant's attorney argued that the prosecutor's invitation to consider the defendant's demeanor during the trial infringed on the defendant's right not to testify. The defendant's attorney noted that during the trial, he had not drawn the jury's attention to the defendant's

presence in the courtroom. He stated that the prosecutor's argument was "completely unfair" and asked the court to deliver a curative instruction. The prosecutor maintained that his argument was not improper.

The court agreed with the defendant's attorney that the argument was improper because the defendant's demeanor during the trial was "not evidence in the case." The court, however, disagreed that the argument reflected an attempt by the prosecutor to call attention to the fact that the defendant did not testify or that it was an invitation to draw an unfavorable inference from the defendant's decision not to testify. After the jury returned to the courtroom, the court delivered the following curative instruction: "I'm going to provide you with a specific instruction that addresses an improper argument of the prosecutor. I'm referring to that portion of the argument that addressed the defendant's outward appearance here in the courtroom during this trial. I am instructing you specifically that the state's argument in that regard was improper, and you are to completely disregard it.

"As I've told you, the lawyers are not witnesses. Their arguments are not evidence in the case. How the defendant appears or doesn't appear here in court has absolutely no bearing on the issues you are about to decide. It is not the evidence in this case. You are not to base your decision in any sense whatsoever on how the defendant appears or doesn't appear here in the courtroom. I'm instructing you to ignore those comments. The issue before you is the events of May 8, 2001.

"As I've also told you repeatedly, the defendant is presumed innocent, and the burden of proof rests entirely with the state to prove his guilt beyond a reasonable doubt. The defendant has not testified in this case. An accused person has the option to testify or not to testify at the trial. An accused person is under no

obligation to testify in his own behalf. He has a constitutional right not to testify. You must draw no unfavorable inferences from the defendant's failure to testify." Neither the defendant nor the state objected to the curative instruction.

Prior to sentencing, the defendant, claiming that "[t]he [c]ourt erred [by] issuing a curative instruction on the improper statements the [prosecutor] made to the jury during closing [argument]," moved for a new trial. The court heard argument on the defendant's motion. The court observed, and the defendant's attorney agreed, that the court had delivered a curative instruction at the defendant's request. The court further observed that in addition to its curative instruction, other instructions delivered in the charge conveyed to the jury that it was not to "go outside the evidence to find the facts" and "that the argument by either counsel was not evidence." The court then ruled: "The court does not find that the isolated remark at the end of the state's argument was such as to have affected the defendant's right to a fair trial and finds that his constitutional rights to due process were not violated." The court denied the defendant's motion for a new trial.

The defendant maintains that by inviting the jury to draw inferences from his demeanor during the trial, the prosecutor improperly based his argument on matters that were outside of the evidence. On this ground alone, the defendant claims that the argument deprived him of a fair trial. The defendant does not claim, as he did at trial, that the argument infringed on his right not to testify.

The state maintains that the argument was a proper "attack on the weakness of the defendant's defense of mental illness and the evidence offered by the defendant in support of that claim." The state refers in particular to the testimony of Kenneth M. Selig, a psychiatrist who

examined the defendant, reviewed his mental history and testified concerning the defendant's mental well-being. Selig testified that the defendant suffered from a "serious mental disorder," which "make[s] him very vulnerable to becoming psychotic . . . under stress." Selig opined that "[p]robably the most accurate diagnosis is some form of personality disorder, which means a long-standing stable but very abnormal personality structure that renders him so vulnerable to stress that he'll lose touch with reality." Selig also opined that the defendant's mental illness was "very acute" and that his "motivations were bizarre" at the time that he attacked the victim, and, thus, he lacked a substantial capacity to control his conduct within the requirements of the law. The state characterizes its argument as a proper appeal "to the jury's common sense and observations" and asserts that the argument did not improperly besmirch the defendant's character or invite the jury to draw any inferences from the fact that the defendant did not testify.

"Appellate review of a trial court's decision granting or denying a motion for a new trial must take into account the trial judge's superior opportunity to assess the proceedings over which he or she has personally presided. . . . Thus, [a] motion for a new trial is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds. . . . In our review of the denial of a motion for [a new trial], we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *McIntyre*, 250 Conn. 526, 533, 737 A.2d 392 (1999). To determine whether the court abused its discretion, we must determine whether

prosecutorial impropriety deprived the defendant of a fair trial.

"[I]n analyzing claims of prosecutorial [impropriety], we engage in a two step analytical process. The two steps are separate and distinct: (1) whether [impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. Put differently, [impropriety] is [impropriety], regardless of its ultimate effect on the fairness of the trial; whether that [impropriety] caused or contributed to a due process violation is a separate and distinct question . . . .

"[T]he touchstone for appellate review of claims of prosecutorial [impropriety] is a determination of whether the defendant was deprived of his right to a fair trial, and this determination must involve the application of the factors set out . . . in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987). As [our Supreme Court] stated in that case: In determining whether prosecutorial [impropriety] was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 799, 911 A.2d 1099 (2007).

A

We first consider whether prosecutorial impropriety occurred. "[A] prosecutor, in fulfilling his duties, must confine himself to the evidence in the record. . . . Statements as to facts that have not been proven

amount to unsworn testimony, which is not the subject of proper closing argument. . . . A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 746, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006); see also *United States* v. *Young*, 470 U.S. 1, 18, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (noting that improper comment during closing argument may jeopardize defendant's right to be tried solely on basis of evidence presented to jury). The fifth amendment's guarantee of due process encompasses the requirement that a conviction be supported by sufficient proof. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith* v. *Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). "[O]ne accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor* v. *Kentucky*, 436 U.S. 478, 485, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978).

Thus, it is a fundamental principle that the jury must base its decision solely on the evidence, whether it be direct or circumstantial, in the record. The trial affords the party who bears the burden of proof a full and fair opportunity to present evidence in support of its case. It also affords the opposing party a full and fair opportunity to challenge the admissibility of such evidence. Certainly, one of the trial court's most important duties is to resolve evidentiary disputes that arise during trial. "Evidence" has been defined as "[a]ny species of proof,

or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, exhibits, concrete objects, etc., for the purpose of inducing belief in the minds of the court or jury as to their contention." Black's Law Dictionary (6th Ed. 1990).

Here, the defendant exercised his fundamental right to be present at his trial. See *State* v. *Jones*, 281 Conn. 613, 636, 916 A.2d 17 (2007). The defendant also exercised his right not to testify; see *State* v. *Vega*, 36 Conn. App. 41, 44 n.6, 646 A.2d 957 (1994); and, thus, did not take the witness stand. The issue is whether the courtroom demeanor of the defendant, who did not testify at trial, was evidence in the record and, accordingly, fodder for the prosecutor's closing argument.

We may presume that the defendant was in the view of the jury during the proceedings. Nonetheless, his demeanor was not a part of the evidence in the record and, therefore, was not a proper subject of the prosecutor's closing argument. The defendant did not testify; apart from his courtroom identification by several witnesses, his appearance or presence in the courtroom was not otherwise introduced into evidence by the parties in this case. For the prosecutor to have relied in argument on the defendant's courtroom demeanor was not proper because it constituted argument on matters extrinsic to the evidence.[5] See *United States* v. *Pearson*,

[5] In its brief, the state cited cases from other jurisdictions in which similar issues have been addressed. Its research sheds light on the issue. Our conclusion is reinforced by those courts that, on various grounds, have deemed improper prosecutorial commentary on a defendant's courtroom demeanor, when such commentary is not related to a defendant's demeanor while testifying. See, e.g., *Borodine* v. *Douzanis*, 592 F.2d 1202, 1210–11 (1st Cir. 1979) (improper for prosecutor to comment on defendant's demeanor during trial because such observations are irrelevant); *United States* v. *Carroll*, 678 F.2d 1208, 1209–10 (4th Cir. 1982) (improper for prosecutor to comment on defendant's courtroom behavior as evidence of guilt); *United States* v. *Schuler*, 813 F.2d 978, 981 (9th Cir. 1987) ("prosecutor's comment on a defendant's off-the-stand behavior constitutes a violation of the due process clause of the fifth amendment"); *United States* v. *Wright*,

746 F.2d 787, 796 (11th Cir. 1984) (improper for prosecutor to comment on defendant's behavior off witness stand because such behavior not evidence).

## B

Having identified impropriety, we next consider whether it deprived the defendant of a fair trial. We already have identified the factors relevant to our analysis and will address each factor in turn.

First, the impropriety was not invited by defense argument or conduct. Second, the impropriety was not severe. Although the argument was improper because it was based on facts that were not in evidence, the argument was less prejudicial than it might have been were it based on facts of which the prosecutor, by virtue of his position and investigation of the case, had independent knowledge. Cf. *State* v. *Griffin*, 97 Conn. App. 169, 179, 903 A.2d 253 ("when a prosecutor suggests a fact not in evidence, there is a risk that the jury may conclude that he or she has independent knowledge of facts that could not be presented to the jury" [internal quotation marks omitted]), cert. denied, 280 Conn. 925, 908 A.2d 1088 (2006). Third, the prosecutorial impropriety was not frequent, occurring once at the end of the trial, during the state's rebuttal argument.

489 F.2d 1181, 1186 (D.C. Cir. 1973) (improper for prosecutor to comment on defendant's courtroom behavior as evidence of bad character or guilt).

Contrary to our determination, other state courts have treated a defendant's courtroom demeanor as evidence and have deemed comment related thereto as proper. See *Wherry* v. *State*, 402 So. 2d 1130, 1133 (Ala. Crim. App. 1981) ("[t]he conduct of the accused or the accused's demeanor during the trial is a proper subject of comment"); *Commonwealth* v. *Smith*, 387 Mass. 900, 907, 444 N.E.2d 374 (1983) (prosecutor's comment regarding defendant's courtroom demeanor not improper because prosecutor did not suggest thereby that he had knowledge that jury did not share); *State* v. *Lawson*, 64 Ohio St. 3d 336, 347, 595 N.E.2d 902 (argument concerning defendant's demeanor not improper because defendant's " 'face and body' " are physical evidence subject to comment), cert. denied, 507 U.S. 1007, 113 S. Ct. 1653, 123 L. Ed. 2d 273 (1993).

Fourth, the impropriety was an obvious attempt to refute the expert opinion of Selig and, thus, the defendant's affirmative defense of mental illness. We are not convinced that the prosecutor's reference to the defendant's courtroom demeanor was central to these critical issues. See *State* v. *Lopez*, supra, 280 Conn. 798–99 (court must evaluate "centrality of the [impropriety] to the critical issues in the case" [internal quotation marks omitted]). By discrediting Selig's opinion in this manner, the prosecutor plainly drew the jury's attention to the defendant's demeanor, and thus his mental state, *at the time of the trial*. With regard to the defendant's affirmative defense, the relevant issue before the jury was not whether the defendant was mentally ill at the time of trial, but whether he suffered from a mental illness, and the extent of that illness, on May 8, 2001.

Fifth, we conclude that the curative measures taken, at the defendant's request, were particularly strong. The defendant objected to the improper argument after the prosecutor concluded his rebuttal argument. The court thereafter summoned the jury to the courtroom. The court then identified the portion of the argument at issue, characterized it as improper and instructed the jury that how the defendant appeared during the trial "ha[d] absolutely no bearing on the issues" and that the jury was "to completely disregard" that portion of the prosecutor's argument.[6] The immediacy, specificity and clarity of the court's curative instruction compels us to conclude that it could not have been misunderstood by the jury. Finally, the state presented a very

[6] Later, during its charge, the court instructed the jury that it "may not go outside the evidence to find the facts" of the case. The court also stated: "In reaching your verdict, you should consider all the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. These include arguments and statements by lawyers. The lawyers are not witnesses. What they have said in their closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence."

strong case, which included largely uncontradicted eye-witness testimony concerning the defendant's conduct on May 8, 2001. The state also presented strong evidence, including the defendant's statements to the police, to support a finding that he acted with the mental state required for the commission of the crimes of which he stood charged.

In summary, the prosecutorial impropriety was not invited by defense conduct or argument, was not severe and was not central to a critical issue in the case. This was an isolated instance of impropriety, and the state presented a very strong case. Furthermore, we are particularly persuaded by the court's curative instruction. The defendant posits that "a curative instruction in this instance could not overcome the damage done by the prosecutor's comment" and that the guilty verdict reflects that the jury did not follow the court's instruction. In light of our conclusion that the prosecutorial impropriety was not particularly severe, and absent any clear indication to the contrary, we are confident that the jury followed the court's clear and unequivocal directive to disregard the improper argument. "[I]n the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 828, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006). There has been no such showing here. We conclude that the defendant has not demonstrated that prosecutorial impropriety deprived him of a fair trial.

II

The defendant next claims that the evidence did not support his conviction of the crimes of attempt to commit sexual assault in the first degree, burglary in the first degree and interfering with an officer.[7] We disagree.

---

[7] At the close of the state's case-in-chief, the defendant's attorney moved for a judgment of acquittal challenging the sufficiency of the evidence relat-

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *McCoy*, 91 Conn. App. 1, 3, 879 A.2d 534, cert. denied, 276 Conn. 904, 884 A.2d 1026 (2005). Having set forth our standard of review, we will review in turn each of the crimes at issue.

A

To convict the defendant of attempt to commit sexual assault in the first degree in the manner charged, the

ing to the charges of attempt to commit sexual assault in the first degree and burglary in the first degree. At that time, the defendant's attorney conceded that the state had presented evidence to support a conviction for the crime of interfering with an officer. The court denied the motion, and the defendant's attorney thereafter presented evidence on the defendant's behalf.

Prior to sentencing, the defendant filed a motion for a judgment of acquittal challenging the evidentiary basis for the attempt to commit sexual assault, burglary and interfering with an officer counts of the information. The court summarily denied this motion. With regard to the attempt to commit sexual assault and burglary counts, the defendant claims that the court improperly denied his motion for a judgment of acquittal. With regard to the interfering with an officer count, the defendant claims that the evidence did not support the verdict. The claims, in substance, are challenges to the sufficiency of the evidence and will be addressed as such.

state bore the burden of proving beyond a reasonable doubt that he (1) acted with the specific intent to commit sexual assault in the first degree and (2) took "a substantial step in a course of conduct planned to culminate in his commission of the crime." General Statutes § 53a-49 (a) (2); see also *State* v. *Milardo*, 224 Conn. 397, 403, 618 A.2d 1347 (1993). "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ." General Statutes § 53a-70 (a).

Essentially, the defendant concedes that the state presented evidence that he physically assaulted the victim, yet posits that the state bore the burden of presenting evidence of "sexual contact" between himself and the victim. In this vein, the defendant argues that "[t]he state never demonstrated that [he] penetrated the victim in any way" and that "the state did not prove that the attack, as it occurred, was a sexual one . . . ."

We will dispose of the defendant's claim with little difficulty. There is no basis in law for the defendant's assertion that the state bore the burden of proving that "sexual contact" of any nature occurred between the defendant and the victim. The state presented evidence that the defendant called the victim on the telephone and that, after the victim rejected the defendant's advances, he appeared at her apartment and physically assaulted her. The evidence further permitted a finding that the defendant, carrying devices that could assist him in restraining the victim, choked the victim and dragged her outside of her apartment. The defendant told her to "go with it" and to "let go." He also told her that he loved her. The state also presented evidence

that, following his arrest, the defendant informed police, inter alia, that he had acted with the intent of raping and torturing the victim. Further, the defendant stated that he had entered the victim's apartment with a plan; he had choked her to make her unconscious so that he could bring her back to his apartment. It was reasonable to infer that the defendant intended to accomplish his goal of raping and torturing the victim in his apartment. The defendant's conduct toward the victim and his statements to the victim and, later, to the police, were compelling evidence of his mental state. On the basis of the evidence, the jury reasonably could have found that the defendant acted with the specific intent required for the crime of sexual assault in the first degree and that, by assaulting the victim, he had taken a substantial step in a course of conduct planned to culminate in his commission of that crime.

## B

To convict the defendant of burglary in the first degree in the manner charged, the state bore the burden of proving beyond a reasonable doubt that he (1) entered or remained unlawfully in a building, (2) intended to commit a crime therein and (3) while in the course of committing the offense, intentionally, knowingly or recklessly inflicted or attempted to inflict bodily injury on another person. General Statutes § 53a-101 (a) (2).

The defendant challenges the sufficiency of the evidence only with regard to the essential element of intent. The defendant argues that "[t]he state alleged that [he] attempted to commit sexual assault and will, in all likelihood, use this allegation and [his] conviction for this offense as the predicate offense to support the burglary conviction." The defendant further argues that, as a matter of law, the state cannot support the burglary conviction by relying on his intent to commit the crime

of attempt to commit sexual assault. The defendant, citing *State* v. *Flowers*, 278 Conn. 533, 543, 898 A.2d 789 (2006), posits that even if the state proved beyond a reasonable doubt that he entered the victim's apartment with the intent to commit the crime of attempt to commit sexual assault, it did not prove that he acted with the mental state to commit the underlying assault and, thus, that he entered the building with the intent to commit a crime.

The defendant's claim is based on a presumption that is wholly unsupported by the state's arguments before this court, the information, the state's presentation of its case at trial or the court's charge. The state does not argue before this court that the defendant entered the victim's apartment with the intent to commit the crime of attempt to commit sexual assault. The state alleged in the operative information that the defendant had entered the victim's apartment "with the intent to commit a crime . . . ." The prosecutor did not argue at trial that the defendant had entered the victim's apartment with the intent to commit the crime of attempt to commit sexual assault. Instead, he argued unambiguously that the defendant had planned and began to carry out "a cold, calculated attack" on the victim. Finally, the court did not instruct the jury that the state bore the burden of proving that the defendant entered the apartment intending to commit the crime of attempt to commit sexual assault. Rather, it instructed the jury: "You must further determine whether the unlawful entry was carried out or occurred with the defendant's intent to commit a crime in that building. . . . The necessary intent to commit a crime must be an intent to commit a separate crime other than the crime of burglary. Even if the defendant never actually committed some crime in the premises, if the evidence established beyond a reasonable doubt that he entered into the building with such intention, this is sufficient to

prove that the defendant entered unlawfully with the intent to commit a crime therein."

Having refuted the basis for the defendant's claim, we further conclude that the state presented an ample evidentiary basis for a finding that the defendant acted with the requisite mental state for the commission of the crime. On the basis of the evidence concerning the defendant's conduct prior to and upon his entry into the victim's apartment, as well as his later statements concerning his purpose for entering that apartment, the jury reasonably could have concluded beyond a reasonable doubt that the defendant entered the victim's apartment intending to assault the victim.[8]

## C

To convict the defendant of interfering with an officer in the manner charged, the state bore the burden of proving beyond a reasonable doubt (1) that he hindered a peace officer and (2) that the peace officer was in the performance of his duties. General Statutes § 53a-167a (a).

The state presented evidence that the defendant was arrested at the scene of the crime on May 8, 2001, and that police officers soon thereafter transported him to the local police department. The state presented the following testimony from Posadas: "At some point in the beginning of the booking process, [the defendant] became combative with myself and other officers that were there, [and] refused to submit to the fingerprinting. We had to use pepper spray on him to regain control of him, bring him into a cell block and lock him up in a cell to keep him from hurting anybody." Posadas further testified: "He wouldn't comply with any of our orders to calm down . . . he was not complying with

---

[8] We reach this conclusion mindful that the jury did, in fact, find the defendant guilty of the crime of assault in the third degree, which he does not challenge in this appeal.

anything we were telling him to do." Posadas further testified that the defendant's conduct interfered with his ability to perform his duties. Charles Smedick, a sergeant with the local police department, testified that he was the shift supervisor at the time of the defendant's arrest. Smedick recalled witnessing "a few officers" engaged in a struggle with the defendant in the booking area. Smedick also testified that the defendant "was refusing to be booked totally" and that "he was pepper sprayed to bring him under compliance."

The defendant states in his brief: "Concededly, [his] conduct at the . . . police department could reasonably be construed as interfering with police." The defendant argues that the state alleged in the operative information "that [he] interfered with police on May 8, 2001." The defendant suggests that the evidence supported a finding that his conduct at the police department, described previously, occurred during the early morning hours of May 9, 2001, not on May 8, 2001. On this ground alone, the defendant argues that the evidence was insufficient to sustain the conviction.

As a preliminary matter, we note that time was not a material element of the offense. The defendant does not claim that he was not informed adequately of the nature of the charges against him or that he was otherwise prejudiced by the information; he claims that the evidence was insufficient to convict him of the crime in the manner it was alleged in the information. Even if we were to assume arguendo that a variance existed between the time of the crime as alleged in the information and the evidence introduced, such ground would not necessarily lead us to conclude that the evidence did not support the conviction. It is a "long-established rule that it is not essential in a criminal prosecution that the crime be proved to have been committed on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the

crime charged at any time prior to the date of the complaint and within the period fixed by the Statute of Limitations." *State* v. *Lorusso*, 151 Conn. 189, 191, 195 A.2d 429 (1963).

Furthermore, the defendant has not demonstrated that any variance actually existed between the time of the crime as alleged in the information and the evidence introduced. The state alleged in count five of the information that the defendant committed this crime "*on or about* May 8, 2001 . . . ." (Emphasis added.) "We have consistently held that the state is permitted to charge that a defendant committed a crime 'on or about' a certain date. [W]hen time is not a material element of the crime charged or when a precise date is unavailable [and] [w]here the [information] alleges that an offense allegedly occurred on or about a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date. . . . Because the state can allege that a crime occurred 'on or about' a certain date when time is not a material element of the offense, it follows that such time frame would not have a distinct beginning or clear end. Our Supreme Court has stated that when the [information] uses the 'on or about' designation, proof of a date reasonably near to the specified date is sufficient." (Citation omitted; internal quotation marks omitted.) *State* v. *Carneiro*, 76 Conn. App. 425, 436, 820 A.2d 1053, cert. denied, 264 Conn. 909, 826 A.2d 180, cert. denied, 540 U.S. 915, 124 S. Ct. 304, 157 L. Ed. 2d 208 (2003). "[W]hen time is not of the essence or [the] gist of the offense, the precise time at which it is charged to have been committed is not material . . . ." (Internal quotation marks omitted.) *State* v. *Merriam*, 264 Conn. 617, 650, 835 A.2d 895 (2003).

The state alleged that the defendant interfered with an officer on or about May 8, 2001, and the evidence permitted a finding beyond a reasonable doubt that the defendant, during the early morning hours of May 9,

2001, hindered one or more officers in the performance of their duties. Thus, the state proved beyond a reasonable doubt that the defendant's criminal conduct occurred reasonably near the date specified in the information. The evidence introduced supported the allegations in the information and provided an ample evidentiary basis to support the conviction.

The judgment is affirmed.

In this opinion the other judges concurred.