******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* COURTNEY G.*
## (SC 20290)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Keller, Js.

*Syllabus*

Convicted of multiple counts of first degree sexual assault and risk of injury
to a child in connection with the sexual abuse of S, the daughter of the
defendant's girlfriend, N, the defendant appealed. S first disclosed the
abuse, which began when she was eight years old, at a meeting with
several members of her family, including N, that occurred when S was
seventeen. At trial, S testified that she was crying during the meeting.
Thereafter, the trial court, over defense counsel's objection, allowed N
to testify about S's demeanor during the meeting, and N also testified
that S had been crying. The defendant testified at trial and denied
any inappropriate contact with S. In response to a question from the
prosecutor, the defendant stated that he had an interest in the case
insofar as he did not want to go to jail and leave his children behind.
During closing and rebuttal arguments, the prosecutor stated that the
defendant, having been present in the courtroom and having listened
to S and N testify, displayed a "lack of outrage" at the accusations
against him. The prosecutor also purported to summarize the reasonable
doubt standard, telling the jury that proof beyond a reasonable doubt
is based on common sense and life experience and determined by a
totality of the evidence rather than "just . . . one picky little point."
The prosecutor also remarked on defense counsel's failure to cross-
examine S, calling S's testimony "unchallenged and uncontroverted."
On appeal, the defendant claimed that the trial court improperly admitted
N's testimony about S's out-of-court demeanor and that the prosecutor
made certain improper remarks during closing and rebuttal argu-
ments. *Held*:

1. There was no merit to the defendant's claim that the admission of N's
   testimony regarding S's out-of-court demeanor was improper because
   any error relating to the admission of that testimony was harmless: N's
   testimony that S was crying during the family meeting was unlikely to
   have substantially swayed the jury's verdict because it was cumulative
   of other properly admitted evidence, namely, S's own uncontested testi-
   mony, of peripheral importance to the state's case, and did not relate
   to the elements of the crimes charged; moreover, defense counsel did
   not object to S's testimony that she cried during the family meeting,
   and counsel had the unfettered opportunity to cross-examine N on
   that point.

2. The defendant could not prevail on his claim that the prosecutor engaged
   in certain improprieties during closing and rebuttal arguments:

   a. The prosecutor did not violate the defendant's right to confrontation
   by commenting on his "lack of outrage" because that remark was a
   permissible comment on the defendant's testimonial demeanor: although
   it was unclear whether the prosecutor was referring to the defendant's
   demeanor while testifying, which is a permissible subject of commentary
   insofar as it constitutes evidence on which the jury may properly rely
   in assessing the defendant's credibility, or his courtroom demeanor unre-
   lated to his demeanor while testifying, which is an improper subject of
   commentary, this court concluded that, when the prosecutor's remark
   was viewed in context, the jury reasonably would have construed it as
   a reference to the defendant's testimonial demeanor, as the prosecutor
   immediately followed her remark with a description of the defendant's
   testimony on the witness stand; moreover, defense counsel did not object
   to the remark and, during his own closing argument, apparently con-
   strued it as a reference to the defendant's demeanor on the witness stand.

   b. Certain remarks made by the prosecutor were not improper: the
   prosecutor's remarks regarding the defendant's "lack of outrage" did
   not improperly appeal to the jurors' emotions and passions but, instead,
   asked the jurors to assess the defendant's credibility in light of his
   testimonial demeanor and implicitly urged them to infer, on the basis

of their common sense and experience, that an innocent man falsely accused of sexually assaulting a child would have exhibited outrage while testifying; moreover, the prosecutor did not improperly dilute the presumption of innocence or infringe on the defendant's right to testify by referring to the defendant's interest in the case or improperly express her personal opinion on the defendant's credibility by questioning inconsistencies in the defendant's testimony that he never was alone with S, as those comments were based on the defendant's properly admitted testimony and the inferences that reasonably could be drawn therefrom rather than on the prosecutor's personal opinion; furthermore, it was clear from the context that the prosecutor was referring to defense counsel's closing argument, and not to the defendant's testimony, when she stated that the jury could not consider the statement that the defendant is an innocent man wrongly accused, and, because that statement was consistent with both the law and the trial court's instructions, it did not improperly mislead the jury; in addition, the prosecutor's comments regarding S's lack of motive to lie and testimonial demeanor were not expressions of her personal opinion but called on the jurors to draw inferences based on their common sense and life experience, and, accordingly, the prosecutor did not improperly vouch for S's credibility.

c. Two of the prosecutor's remarks were improper: the prosecutor's description of the reasonable doubt standard was an improper statement of the law, as a reasonable doubt may be based on a single point, so long as that point has a foundation in the evidence and produces a real and honest doubt in the jurors' minds, or on an evidentiary consideration outside of the jurors' own common sense or life experience, and, in light of the fundamental role the reasonable doubt standard plays in the criminal justice system, counsel should utilize a previously approved definition or the one set forth in the trial court's jury instructions instead of paraphrasing the standard; moreover, the prosecutor improperly mischaracterized the evidence and risked diluting the state's burden of proof by informing the jury that S's testimony was "unchallenged and uncontroverted," because, although defense counsel did not cross-examine S, the defendant, during his testimony, expressly denied touching S inappropriately, and, contrary to the prosecutor's suggestion, defense counsel was not required to cross-examine S in order to undermine her credibility or to prove the defendant's innocence.

d. Applying the factors set forth in *State* v. *Williams* (204 Conn. 523), this court could not conclude that the prosecutor's improper statements deprived the defendant of his right to a fair trial: neither of the improprieties were invited by the defense, they were isolated and infrequent, and the state's case was not so weak as to be overshadowed by them; moreover, defense counsel did not object to the prosecutor's misstatement of the reasonable doubt standard, that impropriety was not blatantly egregious or inexcusable, and was counterbalanced by defense counsel's frequent description of the high burden imposed on the state, and the trial court's instruction to the jury, which accurately described the reasonable doubt standard and directed the jurors to disregard counsel's recitation of the law to the extent that it differed from the court's own instructions, served to cure the impropriety; furthermore, although the prosecutor's improper reference to S's unchallenged and uncontroverted testimony was central to one of the critical issues in the case, namely, S's credibility in light of the lack of physical evidence or eyewitnesses, the trial court promptly issued the curative instruction requested by defense counsel, that instruction specifically targeted the impropriety, and, when that impropriety was viewed in the context of the whole trial, its impact was minimal, especially in light of the jury's finding of not guilty on certain other charges.

Argued October 22, 2020—officially released June 21, 2021**

*Procedural History*

Substitute information charging the defendant with three counts each of the crimes of sexual assault in the first degree and risk of injury to a child, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *B. Fischer, J.*; verdict and judgment of guilty of two counts each of sexual assault in the first degree and risk of injury to a child, from

which the defendant appealed to this court. *Affirmed.*

*Alice Osedach*, senior assistant public defender, for the appellant (defendant).

*Jennifer F. Miller*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Maxine Wilensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ECKER, J. Following a jury trial, the defendant, Courtney G., was convicted of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that (1) the trial court improperly admitted evidence of the victim's out-of-court demeanor, and (2) the prosecutor made improper remarks during closing argument and rebuttal in violation of his sixth amendment right to confrontation and his fourteenth amendment right to a fair trial. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. The victim, S, was born in October, 1997. When S was four years old, her mother, N, began dating the defendant. By 2005, the defendant, N, and S lived together in an apartment on Poplar Street in New Haven. One day, when S was eight years old, she was home alone with the defendant while her mother was at work. S took a shower and then went into her bedroom to get dressed. S was wearing a tank top and underwear when the defendant approached her and asked her to come into the living room so he could apply lotion to her body. The defendant took S's hand and brought her into the living room, where he removed her tank top and applied lotion to her back, arms, and chest. The defendant then pushed S down onto the couch, removed her underwear, pushed her legs open, and licked her vagina. S was scared, and she tried to move the defendant's head away but was unable to do so. When the defendant was done, he told S not to say anything because her mother "would kill him." The defendant sexually assaulted S in this manner more than once when they lived on Poplar Street.

When S was in seventh or eighth grade, she and her family, which included N, the defendant, and her two younger siblings, moved to an apartment on Read Street in New Haven. When S lived on Read Street, the defendant would enter S's bedroom and ask to see her naked. On more than one occasion, the defendant picked S up, brought her to his bedroom, put her on the bed, and held her down while he licked her vagina.

In March, 2015, when S was seventeen years old, she and her family lived in an apartment on Winchester Avenue in New Haven. S's bedroom was in the dining room, and a black curtain was hung in the doorway to separate the dining room from the kitchen. On March 8, 2015, S and her cousin, T, who was one year older than S, were getting ready to go out. T showered and then went into the dining room to dress while S showered. T was naked, except for her bra, and she sat on S's bed to put on her underwear. At this point, the defendant, who was in the kitchen, asked T if he could

ask her a question. T responded in the affirmative, and the defendant told T she had to "promise that [she] wouldn't tell anybody about what he's about to ask." The defendant then asked T if she "shaved." T responded "no . . . ." The defendant asked T if he "can . . . see." T replied "[n]o. That's not appropriate."

After T was dressed, she went into the kitchen and noticed that she "could see straight through" the black curtain into the dining room. In light of T's state of undress and the ability to "see pretty much everything" in the dining room from the kitchen, T realized that the defendant had been referring to her vagina when he asked her if she shaved. Upset, T went into the bathroom to report the defendant's question to S. When S heard what the defendant had asked T, S began to cry.

That night, T made a series of phone calls to her mother, her aunt, and N. After receiving T's phone call, N was shocked and angry. N called the defendant at work and informed him that their relationship was over and that he should "come get [his] stuff." The defendant asked N, "why, [is it] because [he] asked [T] if she was a shaver?" Shortly after speaking to N, the defendant texted S and asked her if he was "a dead man walking."

The next day, there was a family meeting at which S, N, T, S's grandmother, and S's aunts were present. At the meeting, S disclosed that the defendant also had asked her if she shaved her vagina. S also revealed that the defendant had touched her breasts. S was "too scared" to disclose any further details of the defendant's sexual abuse because this was her "first time talking about it" and "everybody was staring at [her] . . . ." S and the others were crying during the meeting. A few days later, S and her mother reported the sexual abuse to the police.

The defendant was arrested and charged with three counts of sexual assault in the first degree in violation of § 53a-70 (a) (1) and three counts of risk of injury to a child in violation of § 53-21 (a) (1). Following a jury trial, at which the defendant testified, the jury found the defendant not guilty of one count of sexual assault in the first degree and one count of risk of injury to a child but found the defendant guilty of the remaining charges.[1] The trial court sentenced the defendant to a total effective sentence of twenty years of imprisonment, execution suspended after fifteen years, followed by fifteen years of probation. This appeal followed.[2]

I

The defendant first claims that the trial court improperly admitted N's testimony that S was crying during the March, 2015 family meeting because evidence of S's demeanor at the meeting was irrelevant and, even if relevant, more prejudicial than probative. The following additional facts and procedural history are relevant to our resolution of the defendant's claim.

Prior to trial, the defendant filed a motion in limine to preclude the state "from offering any 'demeanor evidence' unless the defendant opens the door by challenging [S's] testimony or credibility regarding any out-of-court statements or delayed reporting." (Footnote omitted.) Specifically, the defendant sought to exclude "testimony from witnesses concerning their observations of [S's] emotional state at the time of the disclosure, for example, whether [S] was crying, shaking, trembling, scared, or other similar information." The defendant filed a memorandum of law in support of his motion, in which he argued that, pursuant to *State* v. *Burney*, 288 Conn. 548, 954 A.2d 793 (2008), and *State* v. *Daniel W. E.*, 322 Conn. 593, 142 A.3d 265 (2016), evidence of a complainant's demeanor at the time of a delayed disclosure of sexual assault is inadmissible "unless the defendant opens the door by challenging the complainant's testimony or credibility regarding any out-of-court statements or delayed reporting. The demeanor testimony has minimal, if any, probative value unless the defendant challenges the complainant's credibility regarding any out-of-court statements or delayed reporting." The defendant further argued that evidence of S's demeanor at the time of her disclosure would be unduly prejudicial because it "is likely to enflame the emotions, passions and sympathy of the jury."

At trial, S testified during the state's case-in-chief that she first reported the defendant's sexual abuse at the family meeting in March, 2015, when she told her mother, grandmother, aunts, and cousin that the defendant had touched her breasts. S further testified that, at the time of her disclosure, she, along with everyone else present at the meeting, was crying. Defense counsel did not object to or move to strike S's testimony regarding her demeanor at the time of her disclosure. Additionally, defense counsel did not cross-examine S and, therefore, did not challenge her credibility on the basis of her delayed disclosure of the abuse.

On the second day of the defendant's trial, the state presented the testimony of S's mother, N. In light of the defendant's pending motion in limine, the state made an offer of proof outside the presence of the jury regarding N's testimony of S's demeanor at the family meeting. During the offer of proof, N testified that she, S, and everybody else at the family meeting had been crying. Following the offer of proof, defense counsel objected to the admission of N's demeanor testimony, pointing out that he had not challenged S's credibility, and, "[a]s a result, this highly prejudicial, highly inflammatory testimony simply is not probative of anything at this point" pursuant to *Burney* and *Daniel W. E.* The state disagreed, arguing that nothing in *Burney* or *Daniel W. E.* precludes a witness from testifying about his or her observations. The trial court agreed with the state that N was not a constancy of accusation witness but, rather,

a lay witness who was "entitled to testify to what she observed if it's . . . relevant evidence." The trial court found that N's proffered testimony was "relevant evidence for th[e] jury to consider" and that the probative value of N's testimony outweighed its prejudicial effect. Therefore, the trial court overruled defense counsel's objection and permitted N to testify as to her observation of S's demeanor, but cautioned that it would not permit N to testify as to her "observations of other people in the room . . . ." Thereafter, the prosecutor asked N in front of the jury: "What did you notice about [S's] emotional state during the [family meeting]?" N responded that "[s]he was crying."

At the defendant's sentencing, defense counsel moved for a new trial, arguing, among other things, that "the court's evidentiary ruling concerning the admission of evidence for [S's] demeanor . . . was an error and warrant[s] a new trial." The trial court denied the motion. On appeal, the defendant renews his claim that the trial court improperly admitted N's testimony regarding S's demeanor at the family meeting, alleging that it was irrelevant and unduly prejudicial.

"We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). "The trial court is given broad discretion in determining the relevancy of evidence and . . . in balancing the probative value of proffered evidence against its prejudicial effect." (Citations omitted; internal quotation marks omitted.) *State* v. *Willis*, 221 Conn. 518, 522, 605 A.2d 1359 (1992). "[I]n determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling, and we will upset that ruling only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Ayala*, 333 Conn. 225, 243–44, 215 A.3d 116 (2019).

We need not address whether the trial court abused its discretion in admitting N's testimony regarding S's demeanor because, even if we assume, without deciding, that an evidentiary error occurred, the defendant has failed to fulfill his burden of establishing harm. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper ruling] is harmless in a particular case depends [on] a number of factors, such as the importance of the . . . testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of

the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) Id., 231–32.

N's testimony regarding S's demeanor at the family meeting was duplicative of S's testimony, which was admitted into evidence without objection or contradiction. Because N's demeanor testimony was cumulative of other properly admitted evidence, it was unlikely to have substantially swayed the jury's verdict. See, e.g., *State* v. *Bouknight*, 323 Conn. 620, 628, 149 A.3d 975 (2016) (improper admission of evidence was harmless because it was "cumulative of other properly admitted evidence" and "there was no evidence offered to contradict it" (internal quotation marks omitted)); *State* v. *Dehaney*, 261 Conn. 336, 364, 803 A.2d 267 (2002) ("[i]t is well recognized that any error in the admission of evidence does not require reversal of the resulting judgment if the improperly admitted evidence is merely cumulative of other validly admitted testimony" (internal quotation marks omitted)), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003). Furthermore, although N was an important witness for the state, the specific statement at issue (i.e., "[s]he was crying") did not pertain to the elements of the crimes charged and was of peripheral importance to the state's case. Lastly, N's demeanor testimony was brief and subject to unfettered cross-examination. On this evidentiary record, we conclude that the allegedly improper admission of N's demeanor testimony was harmless.[3]

## II

The defendant next claims that the prosecutor violated his sixth amendment right to confrontation and his fourteenth amendment right to a fair trial by making improper remarks during closing argument and rebuttal. Specifically, the defendant contends that the prosecutor violated his sixth amendment right to confrontation by commenting on his "lack of outrage" at trial. The defendant also contends that the prosecutor violated his fourteenth amendment right to a fair trial by (1) appealing to the emotions and passions of the jurors, (2) informing the jury that he had "a big, big interest in the outcome of this case," (3) improperly expressing a personal opinion on the defendant's credibility, (4) misleading the jury on the law and the evidence, (5) vouching for the credibility of the witnesses, (6) misstating the reasonable doubt standard, and (7) shifting or diluting the state's burden of proof.[4] For the reasons that follow, we conclude that two of the prosecutor's statements were improper but that the improprieties did

not deprive the defendant of his fourteenth amendment right to a fair trial.

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant" of a constitutionally protected right. (Internal quotation marks omitted.) *State* v. *Payne*, 303 Conn. 538, 560, 34 A.3d 370 (2012). The standard governing our review of a prosecutorial impropriety claim depends on the nature of the constitutional right allegedly violated. "[W]hen a defendant raises on appeal a claim that improper remarks by the prosecutor deprived the defendant of his constitutional right to a fair trial, the burden is on the defendant to show, not only that the remarks were improper, but also that, considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." Id., 562–63. "On the other hand . . . if the defendant raises a claim that the prosecutorial improprieties infringed a specifically enumerated constitutional right, such as the fifth amendment right to remain silent or the sixth amendment right to confront one's accusers, and the defendant meets his burden of establishing the constitutional violation, the burden is then on the state to prove that the impropriety was harmless beyond a reasonable doubt." Id., 563. "Regardless of the type of constitutional right at stake, the burden is always on the defendant to show that the prosecutor's impropriety resulted in the violation of a constitutional right." *State* v. *Jose R.*, 338 Conn. 375, 386–87, 258 A.3d 50 (2021).

In the present case, the alleged prosecutorial improprieties occurred during closing argument and rebuttal. It is well established that "prosecutorial [impropriety] of a constitutional magnitude can occur in the course of closing arguments. . . . When making closing arguments to the jury, [however, counsel] must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based [on] the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . The occasional use of rhetorical devices is simply fair argument. . . .

"Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. [The prosecutor] is not only an officer of the court,

like every attorney, but is also a high public officer, representing the people of the [s]tate, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence [on] jurors. . . . While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment [on], or to suggest an inference from, facts not in evidence, or to present matters [that] the jury ha[s] no right to consider." (Internal quotation marks omitted.) *State* v. *Ciullo*, 314 Conn. 28, 37–38, 100 A.3d 779 (2014).

A

We first address whether the prosecutor violated the defendant's sixth amendment right to confrontation[5] by commenting on the defendant's "lack of outrage" at trial. The defendant contends that it is unclear whether the prosecutor was referring to his demeanor while testifying as a witness, while observing the testimony of other witnesses, or both, but argues that, regardless of the precise demeanor to which the prosecutor was referring, her remarks improperly infringed on his constitutional right to be present in the courtroom and to confront the witnesses against him. The state responds that the prosecutor's remarks, when construed in context, were not improper because they referred to the defendant's testimonial demeanor, which "is one of the key factors for a jury to evaluate in its credibility determinations." We agree with the state.

The following additional facts are relevant to this claim. The defendant was present in the courtroom throughout the trial and testified on his own behalf. The defendant denied sexually assaulting S or touching her in an inappropriate manner, stating that S's allegation of sexual abuse "disgusted me. It made me sick 'cause I never did anything like that." At another point in his testimony, the defendant explained that, when he heard about S's allegation of sexual abuse, he felt "sickened" and "disgusted" because he "raised her since she was four and . . . would never do anything to her."

During closing argument, the prosecutor pointed out that the defendant had "listened to all of the witnesses in this case. He listened to [S], he listened to [T], he listened to [N]. There was a lack of outrage on his part. Sure, he said, oh, it's disgusting, and, oh, whatever else he said, but there was no true, true outrage. Ask yourselves, wouldn't you be outraged? There was also an inability on the defendant's part to cite a motive for [S] to make this up. Remember his cross-examination. I start to question him, and suddenly he's not as sure as he was on direct."

Defense counsel addressed in his closing argument the prosecutor's comments regarding the defendant's

lack of outrage, stating: "I want to talk about my client . . . and his testimony. The [prosecutor] said he wasn't outraged enough. If he had been too enraged, she'd say look at his reaction. Look at this angry, big, strong, 240 pound man. What's he supposed to do? They don't like his reaction. What's the—actually, what is the appropriate reaction?" Defense counsel further argued that the defendant "denies these allegations. He took [the] stand. And [the prosecutor] may not like the way he appeared. Maybe [he] wasn't outraged enough."

It is axiomatic that a criminal defendant who exercises "his fifth amendment right to testify on his own behalf . . . opens the door to comment on his veracity." *State* v. *Alexander*, 254 Conn. 290, 297, 755 A.2d 868 (2000). "An accused who testifies subjects himself to the same rules and tests [that] could by law be applied to other witnesses." (Internal quotation marks omitted.) Id., 298. If a defendant chooses to testify, it is the jury's duty to assess the defendant's "credibility . . . by observing firsthand [his] conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Andrews*, 313 Conn. 266, 303, 96 A.3d 1199 (2014). Because a defendant's testimonial demeanor is evidence on which the jury may rely in assessing credibility, a prosecutor permissibly may comment on the defendant's testimonial demeanor in closing argument and rebuttal. See *State* v. *Luster*, 279 Conn. 414, 440, 902 A.2d 636 (2006) (prosecutor's comment that defendant was "coy, evasive, and trying to squirm" was not improper because it was merely descriptive of "the defendant's demeanor during cross-examination, which the jury had observed and could assess independently" (internal quotation marks omitted)); see also *United States* v. *Schuler*, 813 F.2d 978, 981 n.3 (9th Cir. 1987) ("When a defendant chooses to testify, a jury must necessarily consider the credibility of the defendant. In this circumstance, courtroom demeanor has been allowed as one factor to be taken into consideration.").

There are limits, however, to this kind of commentary. First, although a prosecutor may invite the jury to draw reasonable inferences from a defendant's testimonial demeanor, "he or she may not invite sheer speculation unconnected to evidence." (Internal quotation marks omitted.) *State* v. *Stevenson*, 269 Conn. 563, 587, 849 A.2d 626 (2004). Second, a defendant's courtroom demeanor "[un]related to a defendant's demeanor while testifying" is "not a part of the evidence in the record and, therefore, [is] not a proper subject of the prosecutor's closing argument." *State* v. *John B.*, 102 Conn. App. 453, 465 and n.5, 925 A.2d 1235, cert. denied, 284 Conn. 906, 931 A.2d 267 (2007);[6] see also *United States* v. *Schuler*, supra, 813 F.2d 981 n.3 (distinguishing between prosecutor's permissible statements concerning defendant's testimonial demeanor and impermissible statements concerning defendant's nontestimonial courtroom demeanor). Accordingly, a prosecutor's reliance

"in argument on the defendant's courtroom demeanor [off the witness stand is] not proper because it constitute[s] argument on matters extrinsic to the evidence." *State* v. *John B.*, supra, 465; see also *United States* v. *Mendoza*, 522 F.3d 482, 491 (5th Cir.) (agreeing with "other circuits . . . that courtroom demeanor of a [nontestifying] criminal defendant is an improper subject for comment by a prosecuting attorney"), cert. denied, 555 U.S. 915, 129 S. Ct. 269, 172 L. Ed. 2d 200 (2008); *United States* v. *Pearson*, 746 F.2d 787, 796 (11th Cir. 1984) (holding that "the defendant's behavior off the witness stand" was not evidence before jury about "which the prosecutor was free to comment").

To resolve the defendant's claim on appeal, we must determine whether the prosecutor's references to the defendant's "lack of outrage" were permissible comments on his testimonial demeanor[7] or improper comments on his nontestimonial courtroom demeanor. The parties agree that the prosecutor's comments were ambiguous and that it is unclear whether the prosecutor was referring to the defendant's testimonial demeanor, nontestimonial courtroom demeanor, or both. We have previously stated that, when assessing the propriety of a prosecutor's statements, "we do not scrutinize each individual comment in a vacuum but, rather, review the comments complained of in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Felix R.*, 319 Conn. 1, 9, 124 A.3d 871 (2015). We also do "not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Internal quotation marks omitted.) Id.

When the prosecutor's statements regarding the defendant's "lack of outrage" are examined in context, we conclude that the jury reasonably would have construed them as a reference to the defendant's testimonial demeanor. The prosecutor immediately followed her observation regarding the defendant's "lack of outrage" with a description of the defendant's testimony on the witness stand, pointing out: "Sure, he said, oh, it's disgusting, and, oh, whatever else he said, but there was no true, true outrage." The plain inference that the prosecutor was referring to the defendant's testimonial demeanor was reinforced by her subsequent exhortation to the jury to "[r]emember [the defendant's] crossexamination."

Defense counsel did not object to the prosecutor's challenged remarks, which suggests that he "did not believe [them to be improper] in light of the record of the case at the time." (Internal quotation marks omitted.) *State* v. *Medrano*, 308 Conn. 604, 612, 65 A.3d 503 (2013). Furthermore, it appears that defense counsel construed the prosecutor's statements regarding the defendant's "lack of outrage" to refer to the defendant's

testimonial demeanor on the witness stand. During closing argument, defense counsel stated: "I want to talk about my client . . . *and his testimony*. The [prosecutor] said he wasn't outraged enough." (Emphasis added.) Defense counsel reminded the jury that the defendant had "denie[d] these allegations. *He took [the] stand. And [the prosecutor] may not like the way he appeared. Maybe [he] wasn't outraged enough.*" (Emphasis added.) Under these circumstances, we conclude that the prosecutor's challenged comments were not improper references to the defendant's nontestimonial courtroom demeanor but, instead, were permissible references to the defendant's testimonial demeanor. We therefore reject the defendant's sixth amendment claim.

B

We next address whether the prosecutor made improper remarks during closing argument and rebuttal in violation of the defendant's due process right to a fair trial under the fourteenth amendment to the United States constitution.[8] We begin our analysis with the defendant's due process challenge to the prosecutor's remarks regarding his "lack of outrage" at trial. In addition to claiming that the prosecutor's statements violated the defendant's sixth amendment right to confrontation; see part II A of this opinion; the defendant claims that they also improperly appealed to the emotions and passions of the jurors in violation of the defendant's general due process right to a fair trial. We disagree.

Although "[a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors"; (internal quotation marks omitted) *State* v. *Ciullo*, supra, 314 Conn. 56; he or she may "argue about the credibility of witnesses" and "appeal to [the jurors'] common sense in closing remarks," so long as the prosecutor's arguments "are based on evidence presented at trial and reasonable inferences that jurors might draw therefrom." (Internal quotation marks omitted.) *State* v. *O'Brien-Veader*, 318 Conn. 514, 547, 122 A.3d 555 (2015). The defendant's demeanor "while . . . testifying [is] not only visible to the jurors but [is] properly before them as evidence of [his] credibility." *State* v. *Gilberto L.*, 292 Conn. 226, 247, 972 A.2d 205 (2009). The prosecutor did not disparage the defendant or appeal to the jurors' emotions by commenting inappropriately on his testimonial demeanor but, instead, asked "the jurors to draw inferences from the evidence that had been presented at trial regarding the actions of the defendant . . . based on the jurors' judgment of how a reasonable person would act under the specified circumstances." *State* v. *Bell*, 283 Conn. 748, 773, 931 A.2d 198 (2007). Specifically, the prosecutor asked the jurors to assess the defendant's credibility in light of his demeanor on the witness stand and implicitly urged the jurors to infer, on the basis of their common sense and experience, that an innocent man falsely accused of sexually

assaulting a child would have exhibited outrage while testifying. Because the prosecutor's argument was rooted in the evidence, we perceive no impropriety. See *State* v. *Long*, 293 Conn. 31, 60, 975 A.2d 660 (2009) ("[t]he prosecutor's remark that it would be '[q]uite the feat, perhaps, for somebody of [the victim's] age' to concoct such a detailed and specific accusation, and then be able to direct a demonstration of it in court, was not [an] improper" appeal to jurors' emotions because it "neither disparaged the defendant nor painted [the victim] as particularly vulnerable or deserving of sympathy"); *State* v. *Warholic*, 278 Conn. 354, 377–78, 897 A.2d 569 (2006) (prosecutor's statements urging jurors to asses victim's "credibility by recognizing the emotional difficulty that [he] subjected himself to by making the allegations of sexual assault" was proper "because it asked the jurors to assess [the victim's] credibility on the basis of their common sense and life experience").

The defendant next claims that the prosecutor improperly diluted the presumption of innocence and infringed on his right to testify by implying that his testimony was not credible because he had "a big, big interest in the outcome of this case." The following additional facts are relevant to this claim.

The defendant testified at trial, and the prosecutor asked the defendant on cross-examination: "You have an interest in this case [because] [y]ou don't want . . . to go to jail, right?" The defendant responded: "I don't want my kids to be without me. . . . Who—who wants to go to jail? Nobody wants to go to jail." The prosecutor again asked the defendant, "[s]o, you have an interest in this case," to which the defendant replied, "[i]f you want to put it like that, yes."

During closing argument, the prosecutor stated: "Let's talk about the defendant. He has a big, big interest in the outcome of this case. What you have to ask yourself, what interest does [S] have?" The prosecutor reiterated during rebuttal that the defendant "has an interest in this case. He told you that."

As we previously explained, a criminal defendant "who testifies subjects himself to the same rules and tests [that] could by law be applied to other witnesses." (Internal quotation marks omitted.) *State* v. *Alexander*, supra, 254 Conn. 298. One such rule is that a prosecutor permissibly may comment on a witness' motive to lie, "as long as the remarks are based on the ascertainable motives of the witnesses rather than the prosecutor's personal opinion." (Internal quotation marks omitted.) *State* v. *Long*, supra, 293 Conn. 45; see also *State* v. *Warholic*, supra, 278 Conn. 372 ("we have allowed prosecutors to argue that the defendant and his witnesses may have a motive to lie in order to keep either themselves, or their friend or loved one, free from punishment"); *State* v. *Stevenson*, supra, 269 Conn. 584–85 ("the [prosecutor's] remark on rebuttal, suggesting that

the police and the victims had no reason to lie, while the defendant and his friends and family did," was not improper because it was based "on the ascertainable motives of the witnesses"). Thus, a prosecutor's comment regarding a defendant's motive to lie on the witness stand is not improper if it is "based on the evidence presented to the jury and inferences that reasonably could be drawn from that evidence." *State* v. *Long*, supra, 46.

In the present case, the defendant admitted that he had an interest in the outcome of the case because he did not want to go to jail and did not want his children to be without him. Given that the defendant's interest in the outcome of the case properly was admitted into evidence for the jury's consideration, we conclude that the prosecutor's statement regarding the defendant's interest in the case was not improper.[9]

The defendant also claims that the prosecutor improperly expressed her personal opinion on the defendant's credibility when she made the following statements: (1) "The only thing that the defendant probably said that was true, and obviously credibility is up to you, that was true besides his name, his weight, and his height was it was disgusting." And (2) "Oh, my brother was always there. Every day? Oh, yes, every day. That's not believable." As we previously explained, we do not review the propriety of a prosecutor's statements "in a vacuum but, rather . . . in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Felix R.*, supra, 319 Conn. 9.

As the defendant points out in his brief, "[t]his whole case depended on credibility, as there was no physical or corroborating evidence" confirming or denying the sexual abuse of S. It therefore is not surprising that both the prosecutor and defense counsel focused heavily in their closing arguments on the relative credibility of the defendant and S. The prosecutor's first remark that the defendant's only truthful statement "besides his name, his weight, and his height was it was disgusting" was made at the beginning of her closing argument. The prosecutor continued: "In this closing argument, I will be reminding you of certain things, and I will be asking you certain things. I will also be citing to the evidence and the law. I am a representative of the state of Connecticut. My beliefs—personal beliefs or anything like that as to credibility—do not matter. My job here is to recite the evidence and how it applies to the law. You are the judge of credibility. I will be suggesting certain ways that you can judge that credibility, certainly, but it's not any personal belief on behalf of the state or personally myself."

Later in closing argument, the prosecutor pointed out various, specific inconsistencies in the defendant's version of events. The prosecutor mentioned the defendant's testimony that he rarely was home alone with

S,[10] stating: "He wants you to believe [that it is] true that he spent no time or very little time with [S]. They lived together from, what, she was four to seventeen. [N] worked nights. Sometimes he worked days, sometimes he worked nights, but he was definitely alone with her. Remember the go around that he and I had about . . . Poplar Street. Oh, my brother was always there. Every day? Oh, yes, every day. That's not believable. He has nothing and no one to corroborate his story. Not his mom, not his brother, not [N], not [S], not [T], no one. [S] has [T] and [N]."

"[A] prosecutor may not express his [or her] own opinion, directly or indirectly, as to the credibility of the witnesses" because "[s]uch expressions of personal opinion are a form of unsworn and unchecked testimony . . . ." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 583. It is "particularly difficult for the jury to ignore" a prosecutor's expression of personal opinion because a "prosecutor's opinion carries with it the imprimatur of the [state]" and the inference that it is based on "matters not in evidence . . . ." (Internal quotation marks omitted.) Id. "However, [i]t is not improper for the prosecutor to comment [on] the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . . We must give the jury the credit of being able to differentiate between argument on the evidence and attempts to persuade them to draw inferences in the state's favor, on one hand, and improper unsworn testimony, with the suggestion of secret knowledge, on the other hand. The [prosecutor] should not be put in the rhetorical straitjacket of always using the passive voice, or continually emphasizing that he [or she] is simply saying I submit to you that this is what the evidence shows, or the like." (Internal quotation marks omitted.) Id., 583–84.

We conclude that the prosecutor's challenged comments were not improper expressions of personal opinion but, rather, permissible comments on the evidence presented at trial and the reasonable inferences that may be drawn therefrom. The prosecutor marshaled the evidence in support of her argument that the defendant's testimony was not believable, asking the jurors to consider, on the basis of their own common sense and experiences, whether it was reasonable to believe that the defendant never was alone with S because his brother was "always there . . . every day." The prosecutor pointed out that the defendant's version of events was not corroborated by the witnesses or the evidence adduced at trial, but portions of S's testimony were corroborated by T and N. Additionally, the prosecutor repeatedly reminded the jury that it was "the judge of credibility" and that her suggestions as to "certain ways that you can judge that credibility" were not to be construed as the expression of "any personal belief on behalf of the state or [herself] personally . . . ." Given

the context in which the challenged statements were made, we conclude that they were not improper. See *State* v. *Gibson*, 302 Conn. 653, 661, 31 A.3d 346 (2011) (prosecutor's statement, " '[d]id the defendant wilfully [fail] to appear in court . . . I think he did,' " was not improper expression of personal opinion because prosecutor "was attempting to persuade the jury to draw this inference from the circumstantial evidence of intent that he had just recited"); *State* v. *Stevenson*, supra, 269 Conn. 584 (prosecutor's description of "the defendant's explanation as to how he obtained money to buy drugs as 'totally unbelievable' " was not improper expression of personal opinion but, "[r]ather . . . a comment on the evidence presented at trial, and it posited a reasonable inference that the jury itself could have drawn without access to the [prosecutor's] personal knowledge of the case").

The defendant next claims that the prosecutor improperly misled the jury on the law and the evidence when she stated during rebuttal: "*He* also said that he is an innocent man wrongly accused. You're not to consider that either because that's not evidence, and it's improper. It's not the standard by which you judge the facts of this case." (Emphasis added.) It is clear from the context in which the prosecutor's statement was made that the first "he" to whom she referred was not the defendant but, rather, defense counsel. During his closing argument, defense counsel stated that the defendant was "an innocent man wrongfully accused [of] a crime he did not commit . . . ." The prosecutor responded to this statement during rebuttal, stating: "[Defense counsel] talked about his family, he and his family. It's not evidence. Who cares? And I don't mean to be flip about it, but, really, that's . . . not an issue here. He is asking you to go outside the evidence and find reasonable doubt outside of what this courtroom holds. You cannot do that. He also said that he is an innocent man wrongly accused. You're not to consider that either because that's not evidence, and it's improper." Thus, the prosecutor was informing the jury that defense counsel's statement that the defendant is "an innocent man wrongly accused" was not evidence on which the jury could rely to reach a verdict. The prosecutor's statement was consistent with the law and the trial court's instruction that "[a]rguments by counsel are not evidence. The law prohibits either the state's attorney or defense counsel from giving personal opinions as to whether the defendant is guilty or not guilty. It is not their assessment of the evidence that matters; it is only yours." See, e.g., *State* v. *Roman*, 224 Conn. 63, 68, 616 A.2d 266 (1992) ("statements of counsel are not evidence"), cert. denied, 507 U.S. 1039, 113 S. Ct. 1868, 123 L. Ed. 2d 488 (1993). We therefore reject the defendant's claim.

The defendant also claims that the prosecutor improperly vouched for S's credibility by commenting

on her lack of motive to lie and her demeanor on the witness stand.[11] We disagree. Although a prosecutor may not express a personal opinion as to a witness' credibility, he or she "may argue that a witness has no motive to lie . . . and may ask the jurors to draw inferences that are based on their common sense and life experience." (Citation omitted; internal quotation marks omitted.) *State* v. *Elmer G.*, 333 Conn. 176, 205, 214 A.3d 852 (2019). Furthermore, as we have discussed, a witness' demeanor while testifying is "visible to the jurors" and "properly before them as evidence of . . . credibility." *State* v. *Gilberto L.*, supra, 292 Conn. 247; see id., 247–48 (holding that prosecutor properly commented on victim's testimonial demeanor and lack of motive to lie); see also *State* v. *Elmer G.*, supra, 205–206 (same). It was not improper for the prosecutor to comment on S's testimonial demeanor and to appeal to the jurors' common sense regarding her credibility.[12]

Unlike those previously addressed, the defendant's final two claims of prosecutorial impropriety have merit. The first involves the defendant's claim that the prosecutor misstated the law governing the state's burden of proving the defendant guilty beyond a reasonable doubt when she stated: "You look at the evidence, and you decide if the state has proven it beyond a reasonable doubt. Proof beyond a reasonable doubt is based on a cumulative totality of the evidence. It's just not one picky little point. It is a doubt based upon common sense, life experience, and it's on credibility." We agree with the defendant that the prosecutor's description of the reasonable doubt standard was improper.

The reasonable doubt standard plays a fundamental role in our criminal justice system. "The [reasonable doubt concept] provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle [the] enforcement [of which] lies at the foundation of the administration of our criminal law. . . . At the same time, by impressing [on] the factfinder the need to reach a subjective state of near certitude of the guilt of the accused, the [reasonable doubt] standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself." (Citation omitted; internal quotation marks omitted.) *State* v. *Griffin*, 253 Conn. 195, 205, 749 A.2d 1192 (2000). Therefore, it is imperative that statements describing the reasonable doubt standard be accurate, "clear and unequivocal . . . ." (Internal quotation marks omitted.) Id.

It is axiomatic that "prosecutors are not permitted to misstate the law" or to "distort the government's burden of proof . . . because such statements are likely to improperly mislead the jury." (Citation omitted.) *State* v. *Otto*, 305 Conn. 51, 77, 43 A.3d 629 (2012). This court consistently has defined reasonable doubt as "a real doubt, an honest doubt, a doubt [that] has

its foundation in the evidence or lack of evidence, as a doubt for which a valid reason can be assigned, and as a doubt [that] in the serious affairs [that] concern you in [everyday] life you would pay heed and attention to . . . ." (Internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 371, 796 A.2d 1118 (2002); see also Connecticut Criminal Jury Instructions 2.2-3, available at https://www.jud.ct.gov/JI/criminal/Criminal.pdf (last visited June 18, 2021). Thus, contrary to the prosecutor's assertion, a reasonable doubt may be based on "one picky little point," so long as the "point" produces in the jurors' minds a real and honest doubt with a foundation in the evidence or lack thereof, and amounts to an articulable doubt about which the jurors would pay heed in the serious affairs of life. See *State* v. *Ferguson*, supra, 371. Also contrary to the prosecutor's formulation, a reasonable doubt may be based on an evidentiary consideration that does not emanate from the jurors' own "common sense and life experience."[13] We therefore conclude that the prosecutor's description of the reasonable doubt standard was improper.

We take this opportunity to admonish prosecutors and defense counsel alike that they generally should avoid paraphrasing the reasonable doubt standard. The reasonable doubt standard is both critically important and, at the same time, "defies easy explication." *Victor* v. *Nebraska*, 511 U.S. 1, 5, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994); see also *State* v. *Jackson*, 283 Conn. 111, 117, 925 A.2d 1060 (2007) ("[t]he perfect definition of reasonable doubt . . . is as uncertain as its place in American jurisprudence is certain" (internal quotation marks omitted)), quoting *Chalmers* v. *Mitchell*, 73 F.3d 1262, 1266 (2d Cir.), cert. denied, 519 U.S. 834, 117 S. Ct. 106, 136 L. Ed. 2d 60 (1996). If a prosecutor or defense counsel wishes to describe the reasonable doubt standard for the jury in closing argument, he or she should utilize a previously approved definition or the one set forth in the trial court's jury instructions. Freelance attempts to explain the reasonable doubt standard should be avoided because they run the risk of confusing or misleading the jury. See, e.g., *State* v. *Jackson*, supra, 125 ("[a]ttempts to explain the term reasonable doubt [will] not usually result in making it any clearer [in] the minds of the [jurors]" (internal quotation marks omitted)); *State* v. *Griffin*, supra, 253 Conn. 209 n.15 ("[A]ttempts to clarify the meaning of the phrase reasonable doubt by explanation, elaboration or illustration . . . more often than not tend to confuse or mislead. . . . Thus, we have repeatedly stated that attempts to clarify reasonable doubt should be avoided because they often tend to obfuscate that concept." (Citations omitted; internal quotation marks omitted.)).

The defendant's second valid claim of impropriety relates to the prosecutor's comment on defense counsel's failure to cross-examine S or to challenge her credibility, which the defendant contends improperly diluted

the state's burden of proof.[14] We agree. The following additional facts are relevant to this claim. At trial, defense counsel declined to cross-examine S. During closing argument, the prosecutor stated: "Remember, important, the defendant never once, never once challenged [S's] credibility. He asked her no questions. Her testimony stands practically unchallenged and uncontroverted." Defense counsel responded to this statement during his closing argument, pointing out: "[The defense has] the right not to present any evidence. And we nevertheless did. I didn't cross-examine [S]. I hope you'll think to yourself that there may be some reasons why, but we did present a defense. [The defendant] testified, and he denied the allegations. He wanted you to hear straight from his mouth that he did not do this. He did not do this."

Following oral argument, defense counsel requested a curative instruction in light of the prosecutor's remark "that defense counsel didn't present any cross or challenge" to S's testimony, arguing that the prosecutor's remark was "improper" and "flip[ped] the . . . burden" of proof. The trial court agreed to issue a curative instruction and subsequently instructed the jury: "If there was any confusion in closing argument raised by [the prosecutor] in . . . closing argument on who has the burden of proof in a criminal matter, it is the state of Connecticut, the prosecutor, [who] has the burden of proving the defendant guilty. As I've indicated to you before, the defendant has no obligation to present any evidence or question any witness. I will charge you on this burden of proof during my charge in a few minutes." Nonetheless, at the defendant's sentencing, defense counsel moved for a new trial, arguing in pertinent part that the prosecutor's statement "constituted improper prosecutorial impropriety, specifically . . . the state's argument switched the burden of proof; it commented on the defense's right not to present a defense or [not] to present any evidence whatsoever." The trial court denied the defendant's motion.

We conclude that the prosecutor committed an impropriety when she informed the jury that S's testimony was "unchallenged and uncontroverted." To begin with, the prosecutor's statement twice mischaracterized the evidence because, contrary to the prosecutor's assertion, S's credibility *was* challenged and controverted. See, e.g., *State* v. *Patterson*, 170 Conn. App. 768, 792–93, 156 A.3d 66 (prosecutorial statements mischaracterizing evidence were improper), cert. denied, 325 Conn. 910, 158 A.3d 320 (2017); *State* v. *Sargent*, 87 Conn. App. 24, 39–40, 864 A.2d 20 (same), cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005). Defense counsel elected not to cross-examine S, but cross-examination is not the only method by which to challenge a witness' testimony—admission of documentary or physical evidence or the in-court testimony of other witnesses, for example, may be used to contradict a

witness' testimony. In this case, the defendant testified that he never sexually assaulted S or touched her in an inappropriate manner, thereby directly challenging and controverting S's testimony. In addition, the prosecutor's statement ran the risk of diluting the state's burden of proving the defendant guilty beyond a reasonable doubt by suggesting that the defendant was required to cross-examine S in order to undermine her credibility and to prove his innocence. See *State* v. *Otto*, supra, 305 Conn. 77 ("prosecutors are not permitted to misstate the law" or to "distort the government's burden of proof"). See generally *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) ("the [d]ue process [c]lause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"). Particularly when we consider the prosecutor's remark in connection with her inaccurate description of the reasonable doubt standard, we conclude that it was improper. But cf. *State* v. *Ciullo*, supra, 314 Conn. 38–39 (prosecutor's statement that "the 'testimony [of the defendant and his son] does nothing at all to create a doubt in this case' " was not improper because both prosecutor and defense counsel "accurately stated the burden of proof in their two hours of closing arguments" and trial court "accurately charged the jury with the correct burden of proof").

### C

Having determined that two of the prosecutor's statements were improper; see part II B of this opinion; we next address whether those improprieties deprived the defendant of his due process right to a fair trial. The defendant bears the burden of demonstrating that, when "considered in light of the whole trial, the improprieties were so egregious that they amounted to a denial of due process." *State* v. *Payne*, supra, 303 Conn. 563. "[O]ur determination of whether any improper conduct by the [prosecutor] violated the defendant's fair trial rights is predicated on the factors set forth in *State* v. *Williams*, [204 Conn. 523, 540, 529 A.2d 653 (1987)], with due consideration of whether that [impropriety] was objected to at trial. . . . Those factors include the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Internal quotation marks omitted.) *State* v. *McCoy*, 331 Conn. 561, 571–72, 206 A.3d 725 (2019). Ultimately, "[t]he issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) Id., 571.

It is undisputed that the prosecutorial improprieties

were not invited by the conduct or argument of defense counsel. Turning to the severity of the prosecutorial improprieties, we must consider whether defense counsel objected to the improper remarks, requested curative instructions, or moved for a mistrial. See, e.g., *State v. Fauci*, 282 Conn. 23, 51, 917 A.2d 978 (2007). Additionally, "we look to whether the [improprieties were] blatantly egregious or inexcusable." Id. Defense counsel did not object to the prosecutor's misstatement of the reasonable doubt standard, which "demonstrates that defense counsel presumably [did] not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial." (Internal quotation marks omitted.) Id. Furthermore, the prosecutor's misstatement of the law governing reasonable doubt was isolated, was not blatantly egregious or inexcusable, and was counterbalanced by defense counsel's frequent description of the "very high burden" of proof imposed on the state by the reasonable doubt standard.[15] The trial court instructed the jurors that, if counsel's recitation of the law differed from the trial court's jury instructions, they must "dismiss from [their] minds what counsel has said to the extent that it differs from what [the court is] telling [them]." Lastly, the trial court's instructions on the law accurately, clearly, and unequivocally described the reasonable doubt standard to the jury.[16] We therefore conclude that the prosecutor's improper comment on the reasonable doubt standard was not frequent or severe and, although improper, was cured by the trial court's jury instructions. See, e.g., *State v. Stevenson*, supra, 269 Conn. 598 ("the [trial] court's instructions, when viewed in light of the other *Williams'* factors, were sufficient to cure any harm to the defendant caused by the [prosecutorial impropriety]").

With respect to the prosecutor's improper statement describing S's testimony as "unchallenged and uncontroverted," we note that defense counsel requested a curative instruction, which the trial court issued. See part II B of this opinion. Given the isolated nature of the prosecutor's comment and the trial court's prompt and effective curative instruction,[17] which specifically targeted the prosecutorial impropriety, we conclude that that this impropriety was not frequent or severe and was cured by the trial court. See, e.g., *State v. Ceballos*, 266 Conn. 364, 413, 832 A.2d 14 (2003) ("[A] prompt cautionary instruction to the jury regarding improper prosecutorial remarks or questions can obviate any possible harm to the defendant. . . . Moreover, [i]n the absence of an indication to the contrary, the jury is presumed to have followed [the trial court's] curative instructions." (Citations omitted; internal quotation marks omitted.)).

We next address whether the prosecutorial improprieties were central to the critical issues in the case. In light of the lack of eyewitnesses and physical evidence,

the critical issue in the case was the credibility of S's testimony regarding the occurrence of the sexual assaults. One of the two instances of prosecutorial impropriety was central to this critical issue. Nonetheless, when viewed in the context of the entire trial, we conclude that "the impact of these . . . improprieties was minimal"; *State* v. *Ciullo*, supra, 314 Conn. 60; in light of the jury's verdict of not guilty on one count of sexual assault and one count of risk of injury to a child. The record "clearly demonstrat[es] the jurors' ability to filter out the allegedly improper statements and make independent assessments of credibility"; id.; and, therefore, we conclude that the prosecutor's improper statements did not prejudice the defendant. See *State* v. *Long*, supra, 293 Conn. 53 (jury's verdict of not guilty on some charges "is a strong indication that the defendant was not prejudiced by" prosecutorial impropriety).

Lastly, we consider the strength of the state's case. As we explained in *State* v. *Felix R.*, supra, 319 Conn. 1, "[t]he sexual abuse of children is a crime which, by its very nature, occurs under a cloak of secrecy and darkness. It is not surprising, therefore, for there to be a lack of corroborating physical evidence . . . . Given the rarity of physical evidence in [sexual assault cases involving children], a case is not automatically weak just because a child's will was overborne and he or she submitted to the abuse . . . ." Id., 18. "[W]e have never stated that the state's evidence must have been overwhelming in order to support a conclusion that prosecutorial [impropriety] did not deprive the defendant of a fair trial." (Internal quotation marks omitted.) *State* v. *Stevenson*, supra, 269 Conn. 596. In the present case, we conclude that the state's case was "not so weak as to be overshadowed" by the prosecutorial improprieties. *State* v. *Carlos E.*, 158 Conn. App. 646, 669, 120 A.3d 1239, cert. denied, 319 Conn. 909, 125 A.3d 199 (2015). We are confident on this record that the defendant was not deprived of his due process right to a fair trial.

The judgment is affirmed.

In this opinion the other justices concurred.

\* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

\*\* June 21, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Each count of sexual assault and risk of injury corresponded to a different time period and location: counts one and two were predicated on the defendant's conduct "on dates in 2005, in the area of Poplar Street," counts three and four "on dates between 2009 [and] 2010, in the area of Read Street," and counts five and six "on dates [between] 2011 [and] 2014, in the area of Winchester Avenue . . . ." The jury found the defendant not guilty of the crimes charged in counts five and six but found the defendant guilty of the crimes charged in counts one through four.

[2] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3).

[3] The defendant contends that "[t]he state's case cannot be considered a strong one [because] there was no corroborating physical evidence or witnesses to [S's] claims." See, e.g., *State* v. *Fernando V.*, 331 Conn. 201,

215–16, 202 A.3d 350 (2019) ("the state's case . . . was not an exceedingly strong one in light of the absence of corroborating physical evidence or any witnesses to the alleged sexual assaults" (internal quotation marks omitted)); *State* v. *Favoccia*, 306 Conn. 770, 809, 51 A.3d 1002 (2012) (describing sexual assault cases that "[lack] physical evidence" and "[turn] entirely on the credibility of the complainant" as "not automatically . . . weak, [but] also not particularly strong" (internal quotation marks omitted)). We explain in part II C of this opinion why this factor—the strength of the state's case—does not weigh in favor of finding the alleged evidentiary error to be harmful.

[4] Defense counsel did not object to many of the alleged instances of prosecutorial impropriety, but, "under settled law, a defendant who fails to preserve claims of prosecutorial [impropriety] need not seek to prevail under the specific requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and, similarly, it is unnecessary for a reviewing court to apply the four-pronged *Golding* test." (Internal quotation marks omitted.). *State* v. *Payne*, 303 Conn. 538, 560, 34 A.3d 370 (2012).

[5] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." The sixth amendment, which is made applicable to the states through the due process clause of the fourteenth amendment; see *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); encompasses a criminal defendant's "right to be present at trial . . . ." *State* v. *Jarzbek*, 204 Conn. 683, 697–98, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988); see also *Illinois* v. *Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) ("[o]ne of the most basic of the rights guaranteed by the [c]onfrontation [c]lause is the accused's right to be present in the courtroom at every stage of his trial").

[6] In *State* v. *John B.*, supra, 102 Conn. App. 453, the Appellate Court did not address whether a prosecutor's improper remarks regarding a defendant's nontestimonial courtroom demeanor violate the sixth amendment. In light of our conclusion that the prosecutor's comments were not an improper remark on the defendant's nontestimonial courtroom demeanor, we need not address this issue.

[7] The defendant contends that, even if the prosecutor's comments are construed as a reference to his testimonial demeanor, they nonetheless were improper because it would be speculative "to expect the defendant to show outrage or anger . . . while . . . testifying." The state responds that the defendant's claim is inadequately briefed because the defendant failed to provide further analysis beyond this conclusory assertion. The state is correct that the defendant has cited no authority and provided no analysis in support of his claim. This fact might constitute inadequate briefing; see, e.g., *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016); but we take it as an indication of the weakness of the claim and choose to reject the claim on its merits. Regardless of whether the prosecutor's remarks regarding the defendant's demeanor while testifying were persuasive to the jury, they were within the permissible bounds of fair comment on witness credibility. Defense counsel responded by offering a different perspective, and it was left to the jury to decide whether the prosecutor or defense counsel, if either, provided a helpful explanation.

[8] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[9] The defendant contends that the prosecutor's statement was improper under *State* v. *Medrano*, supra, 308 Conn. 604, in which we exercised our supervisory authority over the administration of justice to "direct our trial courts in the future to refrain from instructing jurors, when a defendant testifies, that they may specifically consider the defendant's interest in the outcome of the case and the importance to him of the outcome of the trial." Id., 631. We disagree. In *Medrano*, we held that, although a jury charge regarding a criminal defendant's interest in the outcome of the case does not "[undermine] the presumption of innocence" or a defendant's "rights under the federal and state constitutions to a fair trial and to testify in his own defense"; id., 622; there is "a danger of juror misunderstanding" when the trial court's instruction is "viewed in isolation from the qualifying language concerning evaluating the defendant's credibility in the same manner as the testimony of other witnesses . . . ." Id., 629–30. We therefore "instruct[ed] the trial courts to use the general credibility instruction to apply to a criminal defendant who testifies." Id., 631.

Our holding in *Medrano* was predicated on the trial court's role as a

neutral and detached arbiter of justice and its duty to instruct the jurors on the law in a fair, impartial, and dispassionate manner. Although a prosecutor is a minister of justice; see id., 612; she is not neutral, detached, impartial, or dispassionate. Instead, a prosecutor is an advocate with a professional obligation to argue zealously, albeit fairly, on behalf of the state. "The parameters of the term zealous advocacy are . . . well settled," and it "is not improper for the prosecutor to comment [on] the evidence presented at trial and to argue the inferences that the jurors might draw therefrom . . . ." (Internal quotation marks omitted.) *State* v. *Ciullo*, supra, 314 Conn. 40, 41. Because the defendant's interest in the case was adduced at trial, there was nothing improper about the prosecutor's reference to that evidence in her closing argument.

[10] During cross-examination, the following colloquy occurred between the prosecutor and the defendant:

"[The Prosecutor]: And when [N] was working, there were times where you didn't work. Yes, no?

"[The Defendant]: On Poplar Street, yes.

"[The Prosecutor]: Okay. And you were home alone with [S]?

"[The Defendant]: And my brother.

"[The Prosecutor]: Was he there every single time?

"[The Defendant]: He lived four houses away, yes.

"[The Prosecutor]: So, he was there every time you had a day off and you were with [S]?

"[The Defendant]: We used to have video game wars on college football NCAA 2005, yes.

"[The Prosecutor]: Every time?

"[The Defendant]: I didn't have a job at the time. He was always there.

"[The Prosecutor]: So, you were never alone with [S] during that time period?

"[The Defendant]: Occasionally."

[11] Specifically, the defendant challenges the following two statements: (1) "At one point, [S] cried. Let me ask you this. Do you think it's hard to lie—well, let me ask you this. If—do you think or ask yourself how hard it is to fake emotion like you saw on the witness stand. You have to be a darn good actress to do that." And (2) "Well, motive—one of the things about looking at [S's] credibility, you have to look at her motive to lie, and, in this case, the state submits she had none."

[12] The defendant also claims that the prosecutor improperly vouched for T's credibility when she made the following remark: "Wouldn't it shock you like it shocked [T] that somebody you had grown up around makes that comment to you, and, honestly, [T] was a lovely girl, but did she seem bright enough to be able to craft a lie such as this?" For the reasons explained in this opinion, we reject this claim. See *State* v. *Elmer G.*, supra, 333 Conn. 205–206 (prosecutor's statements that " '[i]f a young girl such as [the victim] wanted to fabricate a lie, is this the lie [she] would fabricate' " and " 'I would submit to you that there is no young girl that wants to fabricate an untruth of this extent and this magnitude' " were not improper); *State* v. *Felix*, 111 Conn. App. 801, 810, 812, 961 A.2d 458 (2008) (prosecutor's comment that state's witnesses were " 'not smart enough to lie' " was not improper because "[t]he prosecutor was entitled to apply common sense to the facts in evidence and to highlight [the witnesses'] motives to tell the truth").

[13] Indeed, in a case such as the present one, in which expert testimony was admitted regarding a victim's delayed disclosure of sexual assault, some of the evidence on which the jury may rely to reach a verdict is, by definition, beyond the common knowledge of the average layperson. See, e.g., *State* v. *Iban C.*, 275 Conn. 624, 639, 881 A.2d 1005 (2005) (Expert testimony is admissible only on "matters [that] are not beyond the ken of the average juror . . . . When inferences or conclusions are so obvious that they could be as easily drawn by the jury as the expert from the evidence, expert testimony regarding such inferences is inadmissible" (Citation omitted.)).

[14] Additionally, the defendant claims that the prosecutor improperly diluted the state's burden of proof by commenting on the defendant's failure to "cite a motive for [S] to make this up." Because a prosecutor permissibly may comment on the weaknesses in the defendant's case; see, e.g., *State* v. *Andrews*, supra, 313 Conn. 308; as well as the lack of evidence indicating that a victim has a motive to lie; see, e.g., *State* v. *Elmer G.*, supra, 333 Conn. 205; we reject this claim.

[15] In closing argument, defense counsel informed the jury that it "simply need[ed] to determine if the state proved all the elements of the charges beyond a reasonable doubt. You don't need to figure out what happened.

You are simply determining if the state met its burden. If you have any uncertainty, if you feel like you weren't sure, if you have a moment of hesitation, if you're not confident about the decision, your job is easy and you must find [the defendant] not guilty." At another point in closing argument, defense counsel argued that, "if you think for a moment or have any hesitation that [S] is not telling the truth, then you must return a verdict of not guilty. That is . . . reasonable doubt. If you have a brief hesitation, if you pause, that is exactly what a reasonable doubt is. The evidence does not prove beyond a reasonable doubt that [the defendant] is guilty of these crimes." Finally, defense counsel stated: "[I]f you have a—a moment of hesitation, if you don't know, a feeling in your stomach, if you don't—you are not confident, then that's a reasonable doubt. I'm sure that you will thoughtfully consider all of the evidence of this case. I know you will hold the state to its burden." Defense counsel's description of the reasonable doubt standard as "a moment of hesitation" or "a feeling in your stomach" did not comport with the trial court's reasonable doubt instruction or any previously approved definitions and, therefore, like the prosecutor's description of the reasonable doubt standard, was improper.

[16] The trial court instructed the jury: "The state's obligation is to prove each and every element of the crime charge[d] beyond a reasonable doubt.

"And that brings us to reasonable doubt. Now, what does this mean, beyond a reasonable doubt? The phrase reasonable doubt has no technical or unusual meaning. The meaning of reasonable doubt could be arrived at by emphasizing the word reasonable. It is not a surmise, a guess, or mere conjecture. It is such a doubt as in the serious affairs that concern you, you would heed; that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance. It is not hesitation springing from any feelings of pity or sympathy for the accused, or any other person who might be affected by your decision. It is, in other words, a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence. It is doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence. Proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. Absolute certainty in the affairs of life is almost never attainable. The state does not have to prove guilt beyond all doubt or to a mathematical certainty or to an absolute certitude.

"The law requires, after hearing all the evidence, if there is something in that evidence or lack of evidence which leaves in the minds . . . of the jury as reasonable men and women a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. If there is no reasonable doubt then the accused must be found guilty. Since the burden is [on] the state to prove the defendant guilty beyond a reasonable doubt of every essential element of the crime charged, the defendant has a right to rely [on] a failure of the prosecution to establish such proof. Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis, except guilt, and is inconsistent with any other rational conclusion."

[17] The jury's verdict of not guilty on two of the six charges "speaks to the strength and efficacy of the curative measures adopted." *State* v. *Ciullo*, supra, 314 Conn. 60.